IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TRAVIS L. GRIMES            )
                            )
    v.                      )    NO. 3:16-2276
                            )
SOUTHWEST AIRLINES COMPANY  )

**TO:    Honorable Aleta A. Trauger, District Judge**

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered September 9, 2016 (Docket Entry No. 23), this *pro se* and *in forma pauperis* employment discrimination action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Defendant has filed a motion for summary judgment (Docket Entry No. 59), to which Plaintiff has responded in opposition. *See* Docket Entry Nos. 63 & 64. For the reasons set out below, the undersigned respectfully recommends that the motion be granted and this action be dismissed.

## I.  FACTUAL BACKGROUND

Travis L. Grimes ("Plaintiff") is currently employed by Southwest Airlines Co. ("Defendant" or "Southwest") as an Operations Agent at the Nashville International Airport, a job he has held continuously since moving to Nashville in 2002. Plaintiff began his employment with Southwest in 1997 as a Ramp Agent at the Kansas City airport.

The underlying background facts of this action as gleaned from the record are as follows. On August 8, 2009, Plaintiff, who was 53 years old at the time, suffered an on-the-job injury to his left knee. Pursuant to the Collective Bargaining Agreement ("CBA") for his job classification at

Southwest, he took a twelve week leave of absence with full pay due to the on-the-job injury ("OJI"). *See* CBA, Article 13, Section 12.F (Docket Entry No. 60-4 at 10). At the conclusion of this period, Plaintiff underwent a functional capacity evaluation ("FCE") at "STAR"[1] and was also examined by Dr. Frank Berklacich at the Tennessee Spine and Joint Center on November 19, 2009. Dr. Berklacich completed a Physician's Work Status Report ("November 19 Work Status Report") in which he: 1) checkmarked a box for "Return to Limited Duty" and circled the word "Today;" 2) checkmarked that Plaintiff's MMI (maximum medical improvement) effective date was November 19, 2009; and 3) checkmarked a box under the Restrictions heading for "Continue current restrictions" and included a handwritten notation "per FCE." *See* Docket Entry No. 60-2 at 4. In the report, Dr. Berklacich did not describe the restrictions and he did not attach the FCE. *Id*. Internal e-mails exchanged between employees of Integrated Care Mangaement and Xchanging, companies to whom Southwest had delegated medical case management duties for its injured employees, suggest that the FCE's restrictions were:

> Medium-heavy physical demand: May lift/carry frequently 39 lbs floor to waist (78 lbs occasionally), 33 lbs waist to shoulder (65 lbs occasionally), 34 lbs shoulder to overhead (68 lbs occasionally); push/pull 47 lbs/39lbs (94 lbs/77 lbs occasionally)
>
> Other limitations are: occasional climbing (20 steps at a time, 6 times/hour) and kneeling (30 seconds at a time, 15 minutes/hour).

*See* Docket Entry No. 60-2 at 6. However, Plaintiff contends that Dr. Berklacich told him that he was released to work and that his restriction was a lifting limit of 69 pounds.[2]

Plaintiff took the November 19 Work Status Report to Johnny Miller ("Miller"), a Southwest supervisor, seeking to return to work that day.[3] Plaintiff believed that he was eligible to return to

---

[1] Plaintiff testified at his deposition that the FCE took place at "STAR Medical." *See* Plaintiff's Deposition (Docket Entry No. 60-1) at deposition p. 23. Southwest states that "STAR Physical Therapy" conducted the FCE. *See* Defendant's Memorandum (Docket Entry No. 60) at 6. However, the record does not contain any type of medical document clarifying the actual name of the entity that conducted the FCE.

[2] *See* Plaintiff's Deposition at deposition pp. 24-25.

[3] *Id.* at deposition pp. 23 & 26.

2

work pursuant to Southwest's Transitional Duty Guidelines.[4] These guidelines provide for a six to eight week period of work assignments at full pay for "temporarily injured or ill employees who are expected to return to work without limitations." *See* Exhibit 3 to Plaintiff's Deposition (Docket Entry No. 60-1 at 43). However, Plaintiff was not permitted to return to work, either on Transitional Duty or otherwise, and he remained on an OJI leave of absence, albeit a leave that was now without pay since his twelve weeks of paid OJI leave had expired.

Thereafter, Southwest took steps to clarify Plaintiff's status and his ability to return to work. A letter, dated December 18, 2009, was sent to Dr. Berklacich from Integrated Care Management requesting that he respond to questions about Plaintiff. In a response letter, dated January 14, 2010 ("January 14, 2010 Letter"), Dr. Berklacich checkmarked "yes" to the question "Do you agree with the following restrictions as outlined by the FCE? May lift/carry frequently 39 lbs floor to waist (78 lbs occasionally), 33 lbs waist to shoulder (65 lbs occasionally), 34 lbs shoulder to overhead (68 lbs occasionally); push/pull 47 lbs/39 lbs (94 lbs/77 lbs occasionally) - Occasional climbing (20 steps at a time, 6 times/hour) and kneeling (30 seconds at a time, 15 minutes/hour)." *See* Docket Entry No. 60-2 at 7. He also checkmarked "yes" to the question "Are these restrictions permanent?" and "no" to a question of whether the injury resulted in a permanent impairment. *Id*.

Plaintiff returned to Dr. Berklacich for a previously scheduled follow-up appointment on January 21, 2010. Dr. Berklacich prepared a new Physician's Work Status Report that day ("January 21 Work Status Report"), in which he checkmarked that Plaintiff could return to regular duty that day, but included the handwritten notation "but he maintains pre-injury restrictions that he had for at least 8 yrs: no running, no squatting, no kneeling, no crawling." *See* Docket Entry No. 60-2 at 9. Dr. Berklacich also revised the January 14, 2010 Letter by: 1) marking out his prior answer of "yes" to the question of whether these restrictions were permanent; 2) marking "no" to the question of whether these restrictions were permanent; and, 3) including a handwritten notation of "no running, no squatting, no crawling, no kneeling" with his initials and the date "1/21/10." *See*

---

[4] *Id*. at deposition p. 47.

Docket Entry No. 60-2 at 8. Exactly what happened after Plaintiff's January 21, 2010, appointment is not entirely clear from the record before the Court, but it appears that Plaintiff again attempted to return to work in light of the January 21 Work Status Report, but was again not permitted to return to his job by a Southwest supervisor and he remained on an unpaid leave of absence.[5]

Plaintiff subsequently filed a charge of discrimination ("EEOC Charge") with the Tennessee Human Rights Commission on February 16, 2010, asserting discrimination on the basis of age and disability. *See* Exhibit to Complaint (Docket Entry No. 1) at 11. Plaintiff alleged that:

> I was out because of an on-the-job injury that occurred August 2009, and was returned to work November 23, 2009, with restrictions very similar to those I have had in place since 2000. My supervisor, Johnny Miller, sent me home without explanation. The MRO, Brian Allen has a copy of my return to work letter with the exact restrictions under which I have performed the job as Operations Agent since 2001. On January 23, 2010, Allen denied me return to work at BNA and told me if I wanted to return to work I would have to relocate to another terminal. My job was recently posted so I know it was still available for me to return to work. Younger employees, both with and without permanent restrictions, have been returned to work at BNA following a medical leave of absence.
>
> I believe I am being discriminated against because of my age, 53, in violation of The Age Discrimination in Employment Act of 1967, as amended. I further believe I am being discriminated against because of my disability and my record of disability, in violation of Title I of the Americans With Disabilities Act of 1990, as amended (2008).

*Id*. Southwest responded to the EEOC Charge on March 12, 2010, requesting an opportunity to finish its investigation of the matter before responding in detail. *See* Docket Entry No. 60-7 at 6.

On March 29, 2010, Plaintiff, who still remained on unpaid leave, requested payment for approximately 600 hours of sick time that he had accumulated, a procedure permitted under the CBA.[6] A payment for 608 hours of sick time was made to Plaintiff on April 5, 2010. *See* Docket Entry No. 60-5 at 3. At some point subsequent to the EEOC Charge, Eli Rodriguez, a Station Manager for Southwest, informed Plaintiff via a telephone call that he could return to full time work

---

[5] *Id*. at deposition pp. 45 & 47.

[6] *Id*. at deposition p. 59.

at his former position, to which Plaintiff replied that he first had to finish another job that he had secured while he was not working for Southwest.[7]

On April 8, 2010, Plaintiff returned to his job as an Operations Agent at his full rate of pay.[8] Southwest subsequently issued Plaintiff a check on April 17, 2010, paying him his full rate of pay for the 11 week period from January 21, 2010, to the date of his return to work. *See* Docket Entry No. 60-5. Southwest also responded to the EEOC Charge, requesting that the charge be dismissed in its entirety. *See* Docket Entry No. 60-7 at 7. After an unexplained delay of nearly five years, the EEOC issued to Plaintiff a right-to-sue letter on December 17, 2015.

## II. COMPLAINT AND PROCEDURAL BACKGROUND

On March 14, 2016, Plaintiff filed this lawsuit under the Age Discrimination Employment Act ("ADEA"), 42 U.S.C. 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, alleging age and disability discrimination.[9] *See* Complaint at 3-4. He contends that Southwest wrongfully refused to permit him to return to work in either November 2009 or January 2010 and denied him placement on Transitional Duty. He further alleges that Brian Allen ("Allen") told him he would never be an Operations Agent again and that Allen and Richard Zuellen told him that he would have to relocate to a different job in a different city for less pay if he wanted to remain employed with Southwest. *Id.* at 7-8. He alleges that his job was posted as an open position on a Southwest internal website while he was on his leave of absence and that younger employees, both with and without permanent restrictions, have been allowed to return to work following on-the-job injuries. *Id.* at 8. In addition, Plaintiff alleges that he has suffered retaliation because the company that Southwest uses to administer its workers compensation program has made

---

[7] *Id.* at pp. 52-53.

[8] *Id.* at p. 54.

[9] Plaintiff initially filed this lawsuit in the Northern District of Illinois, Eastern Division. The case was subsequently transferred to this District. *See* Order entered on August 17, 2016 (Docket No. 19).

5

it difficult for him to receive his prescription medications by requiring prior approval, which Plaintiff contends contravenes a settlement agreement he reached with Southwest in 2001-2002 after he suffered an on-the-job injury at the Kansas City airport. *Id*. at 9. Finally, Plaintiff claims that he has been subjected to a hostile work environment because Southwest is "managing through intimidation" and has given him bad evaluations. *Id*. at 10.

After Southwest filed an answer (Docket Entry No. 32), the Court entered a scheduling order setting out pretrial deadlines and providing a period for discovery. *See* Docket Entry No. 36. By Order entered April 7, 2017 (Docket Entry No. 49), the Court permitted Plaintiff to make a limited request for untimely discovery of the return to work forms for other Southwest employees, a request to which Southwest responded via the entry of a protective order regarding the information. *See* Protective Order (Docket Entry No. 58). There are no pending motions other than Southwest's motion for summary judgment. A trial date is not set in the action.

### III. MOTION FOR SUMMARY JUDGMENT

Southwest seeks summary judgment based on several arguments. Southwest contends that Plaintiff has no direct evidence supporting his age and disability discrimination claims and that he cannot set forth sufficient circumstantial evidence supporting a *prima facie* case of age or disability discrimination. Southwest contends that, even if Plaintiff were able to show a *prima facie* case of age or disability discrimination, he cannot set forth evidence showing that Southwest's explanation for not permitting Plaintiff to return to work was a pretext for unlawful discrimination. Southwest asserts that Plaintiff's retaliation and hostile workplace claims should be dismissed because Plaintiff failed to include allegations about retaliation or a hostile workplace in his EEOC Charge and, thus, failed to exhaust his administrative remedies for these claims. Southwest further argues that Plaintiff's allegations fail to support a hostile workplace claim and, to the extent that Plaintiff's retaliation claim is brought under state law, such a claim likewise warrants dismissal on the merits because it lacks factual support. *See* Memorandum in Support (Docket Entry No. 60).

In support of its motion, Southwest relies upon a statement of undisputed material facts (Docket Entry No. 61) and the following evidence: 1) excerpts from Plaintiff's deposition transcript (Docket Entry No. 60-1); 2) the declaration of Patti Colwell, the Workers Compensation Program manager for Southwest, and attached documents (Docket Entry No. 60-2); 3) the declaration of Sharmon Walters, the Manager of Southwest's People's Department, and attached documents (Docket Entry No. 60-3); 4) the declaration of Bob Watkins, Senior Manager of Labor Relations for Ground Operations and Provisioning at Southwest, and attached documents (Docket Entry No. 60-4); 5) the declaration of Peggy Elery, Manager of Payroll at Southwest, and attached documents (Docket Entry No. 60-5); 6) a copy of the business record filings for the Tennessee Spine and Joint Center made with the Tennessee Secretary of State (Docket Entry No. 60-6); and 7) copies of Plaintiff's responses to Southwest's first request for production of documents (Docket Entry No. 60-7).

In response, Plaintiff argues that he suffered an adverse action because he was not paid during the several weeks he remained on an OJI leave of absence after Southwest refused to permit him to return to work and because he was denied the ability to use employee flight benefits during this time. Plaintiff contends that he satisfies all the criteria for a *prima facie* case of both age and disability discrimination and that he has evidence of other Southwest employees who, 1) were permitted to do transitional duty despite having physical restrictions, and, 2) who had return to work forms that did not state whether those employee's restrictions were permanent or temporary. He further contends that the November 19 Work Status Report from Dr. Berklacich did not include any permanent restrictions and that the reference in the report to "current restrictions" was to restrictions on running, squatting, crawling, and kneeling that had been in place since 2001 when he returned to work from an on-the-job injury that year and had never prevented him from working. Plaintiff argues that the two responses that Dr. Berklacich made in January to inquiries from Southwest are contradictory and do not support Southwest's position. He also questions the legitimacy and authenticity of the January 14, 2010 Letter. Finally, Plaintiff contends that his retaliation and hostile workplace claims have merit. *See* Response in Opposition (Docket Entry No. 63).

7

In support of his response in opposition, Plaintiff submits a response to Southwest's statement of undisputed material facts (Docket Entry No. 64) and also files: 1) copies of several pages of documents from his medical records and from Southwest policies (Docket Entry Nos. 63-2, 63-3, and 63-4); 2) copies of medical records from seven Southwest employees (Docket Entry Nos. 63-1 and 63-5 to 63-10); 3) excerpts from the transcript of a 2002 workers compensation settlement hearing (Docket Entry No. 63-11 and 63-13); and 4) copies of computer screen shots concerning Plaintiff's prescription medications (Docket Entry No. 63-12).

In a reply, Southwest contends that Plaintiff has not supported his response in opposition with admissible evidence and also takes issue with other aspects of the evidence filed by Plaintiff in opposition to its motion. *See* Reply (Docket Entry No. 67). Southwest argues that, even if Plaintiff's supporting evidence is considered, his claims nonetheless warrant dismissal because: 1) Plaintiff does not dispute that he failed to exhaust administrative remedies as to his retaliation and hostile work environment claims; and, 2) Plaintiff fails to set forth evidence upon which a jury could reasonably find in his favor on any of his claims of unlawful discrimination. *Id.*[10]

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the

---

[10] The Court notes that Dr. Berklacich apparently died on June 11, 2016, prior to Defendant being served and prior to either party conducting discovery in this case. *See* Defendant's Memorandum in Support (Docket Entry No. 60) at 5, n.3.

motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). To defeat a summary judgment motion, the party opposing the motion must present affirmative evidence to support the party's position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## V. ANALYSIS AND CONCLUSIONS

A. Age Discrimination Claim

The ADEA prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Plaintiff has not offered direct evidence supporting his claim that he suffered discrimination because of his age.[11] In the absence of direct evidence, Plaintiff must set forth circumstantial and indirect evidence that is sufficient to raise an inference that he was discriminated against because of his age. *Geiger*, 579 F.3d at 620. This method of supporting his

---

[11] Direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). The hallmark of direct evidence is that it shows an explicit expression of an unlawful motivation. *See Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).

9

claim is analyzed under the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Geiger*, 579 F.3d at 622 (the *McDonnell Douglas* burden-shifting framework employed in Title VII cases also applies in ADEA cases).

The burden shifting analysis first requires Plaintiff to establish a *prima facie* case of discrimination. The burden then shifts to Southwest to articulate a legitimate nondiscriminatory reason for the challenged action. *Burdine*, 450 U.S. at 254-56. Upon Southwest's proffer of a legitimate non-discriminatory reason, the burden shifts back to Plaintiff to demonstrate that the proffered reason is pretextual, masking intentional discrimination. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Throughout the burden-shifting analysis, Plaintiff retains the ultimate burden of persuading the trier of fact that he suffered intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 517-18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

In order to establish a *prima facie* case under the ADEA, Plaintiff must show that: 1) he is over 40 years old and, thus, is within the class protected by the ADEA; 2) he suffered an adverse employment action; 3) he was qualified for the employment position at issue; and 4) he was either replaced by a person who was significantly younger or was treated differently than similarly-situated individuals who were significantly younger.[12] *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Although Southwest argues that Plaintiff cannot meet the second, third, or fourth elements of his *prima facie* case, Plaintiff's lack of proof on the fourth element of his *prima facie* case is a sufficient basis upon which to grant summary judgment to Southwest on this claim.

---

[12] Southwest argues that the fourth element of the ADEA *prima facie* case requires Plaintiff to show that he was treated less favorably than other similarly-situated employees who were outside the protected class. *See* Defendant's Memorandum in Support at 18. However, the Supreme Court in *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), clarified that proof of a comparable employee outside the protected class is not what is required to satisfy the fourth element of a *prima facie* ADEA case. *See Hale v. ABF Freight Sys., Inc.*, 503 Fed.App'x 323, 334 (6th Cir. 2012).

It is undisputed that Plaintiff was not placed on Transitional Duty by Southwest when he attempted to return to work and was forced to remain on an unpaid leave of absence for several weeks before returning to work. However, these events, in and of themselves, fail to evidence age discrimination. Plaintiff seeks to create an inference of age discrimination by arguing that six Southwest employees – John Hanley, Kelly Ellis, Darin Kramer, Andy Ostergrant, Ted Swetman, and Rand Valery – were younger than him and were treated more favorably in situations in which they returned to work from injuries. He alleges that these six employees were either placed on Transitional Duty despite having work restrictions or were allowed to return to work in situations in which they had restrictions that were more limiting than Plaintiff's restrictions or in which they did not have any notations in their records as to whether their restrictions were temporary or permanent. *See* Plaintiff's Response in Opposition (Docket Entry No. 63) at 3-5. In support of his argument, Plaintiff has filed copies of medical and work records that pertain to the employees' medical restrictions and their return to work. *See* Docket Entry Nos. 63-1 and 10 (Valery), 63-5(Hanley), 63-6 (Ellis), 63-7 (Kramer), 63-8 (Ostergrant), and 63-9 (Swetman).

Even when constured in the light most favorable to Plaintiff, his evidence is not sufficient to support the fourth element of his *prima facie* case. Rule 56 requires parties to support their factual assertions with admissible evidence. Rule 56(c) and (e); *Viergutz v. Lucent Techs., Inc.*, 375 Fed.Appx. 482, 485 (6th Cir. 2010); *Batey v. Amerigroup Tennessee, Inc.*, 2011 WL 1100082 at *4 (M.D. Tenn. Mar. 22, 2011) (Trauger, J.). Plaintiff has not provided affidavits or other sworn declarations from any of the six other Southwest employees. Additionally, the factual statements about the employees made by Plaintiff in his Response in Opposition are unsworn and unsupported by an affidavit and, thus, cannot be considered as evidence in favor of Plaintiff's opposition to summary judgment. Factual statements must be submitted in the form of an affidavit which has been sworn to by the affiant, a statement submitted under the penalty of perjury in accordance with 28 U.S.C. § 1746, deposition testimony, or answers to discovery requests. Factual statements not in these forms should be disregarded by the Court. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.

11

17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 969 (6th Cir. 1991). Plaintiff's statements about the six Southwest employees amount to unsubstantiated assertions that are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. For example, Plaintiff has offered no actual evidentiary support for his general statement that employees Hanley, Ellis, Ostergrant, and Swetman are "ten years younger than myself," *see* Plaintiff's Response at 3-5,[13] and for his statement of the dates of Transitional Duty for employees Hanley, Ellis, and Kramer. *Id*. at 3-4.

In support of his position, Plaintiff also submits several pages of medical and work records about the six employees. Although the records are relevant, the records, standing alone, fail to prove what Plaintiff contends they prove.[14] For example, Plaintiff contends that employees Hanley and Ellis were allowed to work in Transitional Duty on April 1, 2008, and February 12, 2010, respectively. *See* Plaintiff's Response at 3-4. However, the records he submits for these employees do not clearly reflect this conclusion. The records present only inconclusive and partial information about the circumstances under which these employees returned to work. *See* Docket Entry Nos. 63-5 and 63-6. Plaintiff has not presented other admissible supporting evidence, such as affidavits, deposition testimony, or interrogatories, that, 1) explains the information presented in the records, and, 2) presents the additional information that is necessary for Plaintiff to prove that these individuals were similarly situated to him in all relevant respects, were treated differently than he was treated, and are significantly younger than him. Indeed, the bulk of the evidence necessary for

---

[13] Plaintiff's own statements rule out Darin Kramer and Rand Valery as comparable employees. Mr. Valery's age is not alleged by Plaintiff, and Mr. Kramer is alleged to be only five years younger than Plaintiff. The Sixth Circuit has held that, in the absence of direct evidence of age discrimination, an age difference of six years or less is not significant enough to satisfy the *prima facie* case. *Grosjean*, 349 F.3d at 340.

[14] Southwest raises pertinent arguments about the admissibility of these records. *See* Southwest's Reply (Docket Entry No. 67). Given Plaintiff's *pro se* status, the Court will give him the benefit of the doubt and view these records as susceptible of being presented in a form that would ultimately render them admissible. *See Franklin Am. Mortg. Co. v. Chicago Fin. Servs., Inc.*, 145 F.Supp.3d 725, 730-31 (M.D. Tenn. 2015). The Court further declines to strike from the record any response made by the *pro se* Plaintiff or assess fees and costs against him for making filings that may violate the protective order. *See* Docket Entry No. 67 at 7-8.

Plaintiff to satisfy the fourth element of his *prima facie* case is simply not before the Court. Even when these records are viewed in the light most favorable to Plaintiff as the non-moving party, the Court has to essentially engage in speculation and conjecture in order to glean information from these records. In the end, Plaintiff simply fails to set forth sufficient evidence meeting the fourth prong of his *prima facie* case.

Further, the Court finds that Southwest is entitled to summary judgment on this claim even if Plaintiff had shown a *prima facie* case. Upon the showing of a *prima facie* case, the burden shifts to Southwest to articulate a legitimate nondiscriminatory reason for the challenged actions. *Burdine*, 450 U.S. at 254-56. Southwest maintains that Plaintiff was not permitted to return to work on Transitional Duty on November 19, 2009, because the restrictions noted by Dr. Berklacich in the November 19 Work Status Report were unclear and Southwest needed to obtain clarification on the matter. *See* Defendant's Memorandum in Support (Docket Entry No. 60) at 6-7. According to Southwest, once Dr. Berklacich eventually clarified and revised Plaintiff's restrictions in the January 21 Work Status Report to note that he no longer had any lifting restrictions that were permanent and after reviewing the matter, Southwest determined that Plaintiff could return to work on full duty and notified him of such determination. *Id*. at 7-9. Southwest thereafter retroactively paid Plaintiff his wages from the January 21, 2010, date on which Dr. Berklacich confirmed that Plaintiff had no permanent lifting restriction that prevented him from returning to work. *Id*. at 9.

Because Southwest has offered a legitimate, nondiscriminatory reason for the challenged actions, Plaintiff bears the burden of demonstrating that Southwest's reasons are pretextual and mask intentional discrimination against him because of his age. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012). This is not a minimal burden. As the Sixth Circuit has stated:

> To show that an employer's proposed legitimate, nondiscriminatory basis for its employment decision was pretextual, "[a] plaintiff must do more than simply impugn the legitimacy of the asserted justification for her termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (quoting *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)). The complainant can refute the reason articulated by the employer underlying an adverse employment action by showing that the proffered

> reason "(1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct." *Kroger*, 319 F.3d at 866 (citations omitted). The complainant has the burden of producing evidence from which a jury could reject a defendant's explanation for the challenged action, and find instead that the defendant discriminated against the complainant. *Id*.

*Adams v. Tennessee Dep't of Fin. & Admin.*, 179 Fed.App'x 266, 272-73 (6th Cir. 2006).

Although Plaintiff states Southwest's asserted reasons were "not the real reason for its actions, and that [Southwest's] reason was false, and that discrimination was the real reason," *see* Docket Entry No. 63 at 8, Plaintiff's own self-serving conclusions and subjective beliefs are not sufficient to meet his burden as to pretext. *Id*. at 272; *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006); *Eren v. Mars, Inc.*, 27 F.Supp.3d 855, 870 (M.D. Tenn. 2014). Plaintiff has not presented any actual evidence supporting his conclusion and establishing that genuine issues of material fact exist as to whether Southwest's explanations for its actions were pretextual. The undisputed evidence shows that Southwest made reasonably informed and considered decisions regarding Plaintiff's work status after his OJI, which negates any inference of pretext. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559-60 (6th Cir. 2009). Plaintiff clearly disagreed with these decisions. However, his disagreement does not satisfy his burden of showing pretext.

This is not to say that, in some respects, the Court does not sympathize with Plaintiff. Southwest showed little sense of urgency about Plaintiff's circumstances, and the slowness with which it addressed the matter left Plaintiff in the extremely difficult situation of being forced to remain on an unpaid leave of absence while Southwest figured out what it was going to do. Further, it does not appear that Southwest communicated with Plaintiff about his situation other than telling him that he could not return to work on two occasions. There is nothing in the record showing that management at Southwest took any steps to explain to Plaintiff either what was occurring or why the decisions it needed to make were taking so long to occur. Nevertheless, the federal anti-discrimination laws do not prohibit employers from acting callously or unfairly or from engaging in poor management practices. *See Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). While it is quite likely that

14

Southwest expended more time and money in investigating and responding to Plaintiff's EEOC charge and in defending this lawsuit than it would have expended if it had acted promptly and returned Plaintiff to work shortly after his paid leave of absence expired, in the end, there is simply insufficient evidence before the Court upon which any reasonable jury could find that Plaintiff was the victim of intentional age discrimination.

B. Disability Discrimination

Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Further, the ADA imposes upon employers the duty to make reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A).

Because Plaintiff has no direct evidence supporting his claim of disability discrimination, his claim is analyzed under the same *McDonnell Douglas* burden-shifting framework that is applicable to his age discrimination claim. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016). Southwest is entitled to summary judgment on this claim for essentially the same reason as the age discrimination claim. Even if the Court assumes that Plaintiff can show a *prima facie* case under the ADA, he fails to set forth sufficient evidence satisfying his burden of showing that Southwest's reasons for its actions were a pretext for disability discrimination.

C. Retaliation and Hostile Workplace Claims

Summary judgment should be granted to Southwest on these two claims because neither claim was exhausted at the administrative level prior to being brought in this lawsuit. The general rule is that a plaintiff cannot bring a federal employment discrimination claim in a lawsuit if the underlying allegations for the claim were not previously included in an EEOC charge of

discrimination. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Plaintiff's EEOC Charge addressed only the events surrounding Plaintiff's attempt to return to work after his OJI in 2009 and raised only claims of age and disability discrimination based on these events. *See* Exhibit to Complaint at 11. There are no allegations contained in the EEOC Charge that even remotely infer a claim of either retaliation or a hostile workplace. Further, neither claim would be reasonably expected to grow out of the scope of the charge that Plaintiff actually filed, a factor that would render the exhaustion requirement satisfied. *See Tisdale v. Federal Exp. Corp.*, 415 F.3d 516, 527-28 (6th Cir. 2005); *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1988). Accordingly, these two claims should be dismissed. *See Waggoner v. Carlex Glass Am., LLC*, 682 Fed.App'x 412, 417 (6th Cir. 2017) (the court correctly dismissed claims of retaliation and a hostile-work-environment that were not raised or inferred in Plaintiff's charge of discrimination).

Because the Complaint is vague as to the exact legal basis for his retaliation claim, Southwest also argues for dismissal to the extent that the claim is brought under Tennessee state law as a claim of retaliation for filing a workers compensation claim. *See* Defendant's Memorandum in Support at 21-23. Plaintiff responds by asserting that, 1) he has never filed a workers compensation claim in Tennessee, and, 2) Southwest's alleged failure to promptly fill his prescription medications is violating a 2002 court agreement from Kansas in settlement of a workers compensation claim that Plaintiff filed there. *See* Plaintiff's Response in Opposition at 8.

Plaintiff's response suggests that he may not actually be pursuing a claim for retaliation but is, instead, attempting to raise another type of claim. However, the shifting foundation for Plaintiff's claim does not save it from dismissal. Plaintiff has not clearly set out: 1) supporting facts for a state law claim; 2) the legal basis for any type of claim that is not based upon federal employment discrimination laws; and 3) the grounds for federal jurisdiction over a state law claim. The Court is not required to create Plaintiff's claims for him, because to do so would require the courts to explore exhaustively all potential claims of a *pro se* plaintiff and would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest

arguments and most successful strategies for a party." *See Bell v. Tennessee*, 2012 WL 996560 at *9 (E.D. Tenn. March 22, 2012) (quoting *Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215 (6th Cir. 2000). Accordingly, the Court declines to fill in the legal and factual blanks necessary to construe Plaintiff's Complaint as asserting anything other than a retaliation claim brought under federal employment discrimination law, a claim which the Court finds should be dismissed.[15]

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully RECOMMENDS that the motion for summary judgment (Docket Entry No. 59) of Defendant Southwest Airlines Co., be GRANTED and that this action be DISMISSED WITH PREJUDICE as to all claims.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

---

[15] Further, the Court notes that Plaintiff has offered absolutely no evidence that any difficulties that he has encountered regarding his medications are linked in any way to a retaliatory animus on the part of Southwest.